**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| **In Re:** ) | **In Proceedings Under Chapter 11** |
| ) | |
| **ATCHISON CASTING CORPORATION,** ) | **Case No. 03-50965-JWV** |
| **et al.,** ) | **Joint Administration** |
| **Debtors.** ) | |

**ORDER APPROVING AUCTION AND BID PROCEDURES**
**FOR SALE OF SUBSTANTIALLY ALL OF THE BUSINESS AND**
**ASSETS OF INVERNESS CASTINGS GROUP, INC.**

This matter came before the Court upon the <u>Motion Under Sections 105(a), 363 and 365 of the Bankruptcy Code to (i) Approve Auction and Bid Procedures, (ii) Approve the Sale of Substantially All of the Business and Assets of Inverness Castings Group, Inc. Outside the Ordinary Course of Business Free and Clear of Liens and Interests, (iii) Assume and Assign Unexpired Contracts and Leases and (iv) Set a Date for a Sale Hearing</u> ("Motion").[1] After having considered the Motion and the statements of counsel, the Court hereby finds and determines that proper and sufficient notice of the Motion has been given, and that certain relief requested in the Motion, regarding approval of Auction and Bid Procedures, is necessary and proper under the circumstances and is in the best interests of the estate, and it is hereby ORDERED that:

    1.    The Auction and Bid Procedures set forth in the attached Exhibit A are approved.

    2.    The Auction and Bid Procedures approved herein shall govern the submission and consideration of all initial offers and competing bids for the Assets, owned by the Seller, as described in the LOI and the Purchase Agreement to be executed based thereon;

---

[1] Capitalized terms used but not defined in this Order shall have the same meaning set forth in the Motion.

KC01DOCS\646786.5

3. The Debtors are further authorized and empowered to take such additional and other steps as may be necessary or appropriate to effectuate the Auction and Bid Procedures approved by this Order;

4. A second hearing shall be set on October 20, 2003, at 2:30 p.m. CDT at which the Court shall consider (1) subject to the terms of the Auction and Bid Procedures, the approval of the terms of the Purchase Agreement to be entered into based upon the LOI, and the authorization of Debtors to sell the Assets free and clear of all liens, encumbrances, claims and interests, including, but not limited to, any existing right(s) of first refusal or similar protective rights alleged by any party against the Seller or the Assets being sold, and (2) approval of the assumption and assignment of the executory contracts and unexpired leases.

5. The Form of Notice attached hereto as Exhibit B is approved. All other potential qualified bidders known to the Debtors are to receive notice. Additional notice need only be sent to: (i) counsel to Harris Trust and Savings Bank, as Agent; (ii) counsel to Teachers Insurance and Annuity Association of America, (iii) counsel to the Unsecured Creditors Committee; (iv) all governmental agencies required to receive notice of proceedings under the Federal Rules of Bankruptcy Procedure and any local bankruptcy rules; and (v) all entities who have requested notice pursuant to Bankruptcy Rule 2002. All parties of record shall receive electronic notice upon entry of this Order.

Dated: September 16, 2003

                                **/s/ Jerry W. Venters**
                                **UNITED STATES BANKRUPTCY JUDGE**

ORDER SUBMITTED BY:

Mark G. Stingley, Mo.  26071
BRYAN CAVE LLP
1200 Main Street, Suite 3500
Kansas City, Missouri 64105
Telephone:  (816) 374-3200
Telecopy:    (816) 374-3300
Attorneys for Debtors and Debtors in Possession

Stingley to Serve

## EXHIBIT A

## Auction and Bid Procedures

Seller,[1] as an administratively consolidated debtor in the United States Bankruptcy Court (the "Bankruptcy Court") for the Western District of Missouri in Case No. 03-50965, has entered a Letter of Intent (the "LOI"), the terms of which are to be incorporated into an Asset Purchase Agreement (the "Purchase Agreement"), acceptable to Harris Trust and Savings Bank as agent for the lenders ("Agent") and Teachers Insurance and Annuity Association of America as a secured lender ("TIAA") no later than October 1, 2003. The consummation of the transaction contemplated by the Purchase Agreement is subject to the procedures described herein. Seller shall conduct an auction of the Seller's Transferred Assets (as defined in the LOI), pursuant to Section 363 of the Code, pursuant to the follow

1. **Submission of Competing Bids.** Any person (other than the Buyer as defined in the LOI (the "Lead Bidder")) that would like to purchase the Transferred Assets must submit a bid (a "Competing Bid") prior to 5:00 p.m. on October 13, 2003 (the "Competing Bid Deadline"). Each Competing Bid must (i) be in writing; (ii) when considered with all other Competing Bids comprise consideration in an amount equal to or greater than the aggregate consideration made by the Lead Bidder and meeting the requirements of it being at the Alternative Minimum Purchase Price (as defined below); (iii) specify the property that is being bid upon; (iv) identify the bidder and the members of its investor group, as applicable; (v) provide information to demonstrate to the satisfaction of the Seller, the Agent and TIAA the financial wherewithal of the bidder to consummate the proposed transaction; (vi) include a copy of the LOI and/or the Purchase Agreement based upon the LOI signed by the bidder (with any changes from the LOI and/or Purchase Agreement with the Lead Bidder marked electronically); (vii) specify which leases and executory contracts of the Seller are to be assumed and the manner in which the cure amounts will be satisfied by the Competing Bidder; (viii) be on generally the same terms and conditions as the LOI and/or the Purchase Agreement except for the price (*ie*. Competing Bidders are not required to assume the same assets and liabilities as the Lead Bidder); and (ix) be accompanied with a cash Deposit equal to the Deposit set forth in the LOI. Competing Bids should be submitted to the Seller's investment banker, W. Y. Campbell & Company, One Woodward Avenue, 26th Floor, Detroit, MI 48226, attn: Brian Dragon, bdragon@WYCampbell.com, (313) 496-9000. Potential bidders may obtain copies of the LOI and/or the Purchase Agreement with the Lead Bidder from Mr. Dragon.

---

[1]/  All capitalized terms not defined herein shall bear as their meanings the definitions ascribed to them in the Motion under Sections 105(a), 363 and 365 of the Bankruptcy Code to (i) Approve Auction and Bid Procedures, (ii) Approve the Sale of Substantially All of the Business and Assets of Inverness Castings Group, Inc. Outside the Ordinary Course of Business Free and Clear of Liens and Interests, (iii) Assume and Assign Unexpired Contracts and Leases and (iv) Set a Date for a Sale Hearing.

Seller, Agent and TIAA, in their discretion and after consultation with counsel for the Creditors' Committee, will qualify potential bidders according to their financial qualifications to consummate any purchase of the Transferred Assets.

2.  Credit Bid. Parties invoking credit bid rights under Bankruptcy Code § 363(k) are not required to deposit cash and do not have to mark up or file their own Purchase Agreement if they do not propose to have any agreement beyond the

3.  Information to be Provided. Upon written request to the Sellers by any person interested in submitting a bid for the Transferred Assets, the Seller shall, upon execution by such person of a confidentiality agreement and demonstration of the intent to timely consummate a transaction in terms of scope and value that is of interest to the Seller, provide such person with access to relevant business and financial information that will enable such person to evaluate the Transferred Assets for the purpose of submitt

4.  Lead Bid. The Lead Bidder has been granted certain bid protections as follows:  (i) a break-up fee of $250,000.00 (the "Break-up Fee"); and (ii) requiring that Seller will not accept any bid from any other party or parties (an "Alternative Purchaser") that does not deliver aggregate consideration equal to or greater than the amount being bid by the Lead Bidder for the Transferred Assets (the "Alternative Minimum Purchase Price").

In the event the Lead Bidder has executed a Purchase Agreement and either (a) Seller commits a default under the Purchase Agreement that causes the transaction not to close or Seller receives a Competing Bid from an Alternative Purchaser and consummates a transaction involving the sale of the Transferred Assets to an Alternative Purchaser pursuant to these Auction and Bid Procedures for a purchase price equal to or greater than the Alternative Minimum Purchase Price; or (b) if Seller consummates a sale of the Assets to any purchaser within 365 days after the date of the court order approving these Auction and Bid Procedures, the Lead Bidder shall at the closing of the sale of the Assets to the Alternative Purchaser receive the Break-up Fee.  The Lead Bidder shall not be entitled to the Break-up Fee if the Lead Bidder commits a default under the Purchase Agreement that causes the transaction not to close or if other circumstances exist that under the Purchase Agreement preclude the payment of the Break-up Fee to the Lead Bidder.  The Lead Bidder shall not be entitled to the Break-up Fee if the sale to an Alternative Purchaser is not consummated on or before one year after the Sale Hearing (as defined below), unless the Alternate Purchaser is an Affiliate (as the term is defined in 11 U.S.C. § 101(2)) of Seller, in which event the Break-Up Fee shall be payable to the Lead Bidder whenever the sale of the Transferred Assets to the Affiliate occurs and regardless of whether a Competing Bid was received from such Affiliate.  If a Competing Bid indicates that it seeks the assumption and assignment of certain executory contract(s) or unexpired lease(s), the bid must

specify the Competing Bidder's agreement to assume the cure costs of such contracts(s) or lease(s) and include sufficient information to permit the Bankruptcy Court, Seller, the DIP Lenders, the Creditors' Committee, and the affected non-debtor party to the applicable contract or lease to determine the proposed assignee's ability to comply with Section 365 of the Code (to the extent applicable), including providing adequate assurance of such assignee's ability to perform in the future.

5. **Auction.** If one or more Competing Bids have been received prior to the Competing Bid Deadline, then at 1:30 p.m. on October 14, 2003, or such other date as the Bankruptcy Court may determine, Seller shall conduct an auction of the Assets at the offices of Bryan Cave LLP, 1200 Main Street, Suite 3500, Kansas City, Missouri 64105 (the "Auction"). Each Competing Bid submitted at the Auction must comply with the procedures set forth herein.

Parties invoking credit bid rights under Bankruptcy Code § 363(k) shall be entitled to exercise such rights at the Auction. Each entity seeking to bid at the Auction must (i) be the Lead Bidder or have submitted a Competing Bid as provided above prior to the Competing Bid Deadline and (ii) be deemed a qualified bidder by the Debtor and Agent in consultation with the Committee, and appear in person at the Auction or through a duly authorized representative physically present at the Auction.

In the event no Qualified Bids are submitted, the Debtors will not hold the Auction and will proceed to seek approval of the Purchase Agreement with Lead Bidder at the Sale Hearing defined below. Notwithstanding the foregoing, in the event the Auction is not held, parties invoking credit bid rights under Bankruptcy Code § 363(k) shall be entitled to exercise such rights at the Sale Hearing. Parties intending to exercise such rights under 363(k) shall use their best efforts to provide one (1) business days notice to the Debtor, the Lead Bidder, and the Creditors Committee of their intentions to exercise such rights at the Sale Hearing.

If Seller receives one or more Competing Bids prior to the Competing Bid Deadline which satisfy the bid requirements, each qualified bidder and the Lead Bidder shall have the right (and opportunity) to continue to improve its bid at the Auction. All such additional bids must exceed the then highest bid by no less than .5% of the cash portion of the Purchase Price (as set forth in the Purchase Agreement with the Lead Bidder) or such other increment as announced at the Auction. Competing Bidders are not required to assume the same assets and liabilities of the Lead Bidder.

Seller, Agent and TIAA, after consultation with the Creditors' Committee, will select the bid at the conclusion of the Auction which it believes to be the highest or best bid for the Assets ("Winning Bid"). Seller, Agent and TIAA, after consultation with the Creditors'

KC01DOCS\646786.5                                6

Committee, reserve the right to select the best bid, even if not the highest bid. The determination of the Winning Bid shall remain, however, subject to Bankruptcy Court approval. Seller, Agent and TIAA, after consultation with the Creditors' Committee, shall take into account the value, if any, of any assumption of pension liabilities when selecting the Winning Bid. The Winning Bidder must complete and sign all agreements or other documents with Seller evidencing and containing the terms and conditions upon which its Winning Bid was made before the Auction is concluded.

6. Sale Hearing. On October 20, 2003, at 2:30 p.m., or such other date and time as Seller may request, subject to Bankruptcy Court approval, the Bankruptcy Court shall hold a hearing to determine whether to approve the Winning Bid accepted by Seller as the highest or best bid at the Auction (the "Sale Hearing"). If the Lead Bidder objects to Seller's determination of an authorized Competing Bid as the highest or best bid, the Lead Bidder's sole and exclusive remedy shall be to bid under protest at the Auction and have standing at the Sale Hearing to contest Seller's determination.

7. Cure Amounts. At least ten days prior to the Sale Hearing, the order approving these procedures shall be served on (i) all parties to executory contracts and unexpired leases that could be assumed and assigned, together with a statement of the Debtors as to the current intention of the Lead Bidder regarding its intention on accepting the assignment of such assumed executory contracts and/or unexpired leases, along with the proposed amount due for each such contract and lease under Bankruptcy Code § 365(b) and (ii) all parties holding liens, claims or encumbrances against assets proposed to be sold free and clear of such liens, claims and encumbrances. If any Competing Bid is received at the Auction, notice shall be immediately sent to all parties to the executory contracts and/or unexpired leases regarding the Competing Bidder's intentions concerning the executory contracts or unexpired leases. Furthermore, all parties to executory contracts and/or unexpired leases that are proposed to be assumed and assigned and who do not agree with the proposed assumption and assignment and/or the proposed cure amounts shall at least one (1) day prior to the Sale Hearing file an objection with the Bankruptcy Court and serve such objection on the Seller, Agent, TIAA and the Creditors Committee objecting to such assumption and assignment and/or the proposed cure account with a statement as to their suggested cure amount.

8. Failure of Winning Bidder to Consummate Sale. Provided that the Lead Bidder is the successful bidder at the Auction and the bid is approved at the Sale Hearing, the closing of the sale of the Transferred Assets shall be five (5) business days following the entry of an order of the Bankruptcy Court approving the sale, unless extended by agreement of the Seller and the Agent. If the Lead Bidder is not the

successful bidder at the Auction then the closing of the bid that was the highest and best bid at the Auction that is approved at the Sale Hearing will occur on or before November 21, 2003, unless extended by agreement between the Seller and the Agent. If for any reason a Winning Bidder fails to consummate a sale of the Assets, or any part thereof, the offeror of the second highest or best bid (subject to same reservations) for the Assets (as determined by Seller, after consultation with the Agent, TIAA, the DIP Lenders and the Creditors' Committee), will automatically be deemed to have submitted the highest and best bid and Seller is authorized to effect the sale of the Assets, or any part thereof, to such offeror as soon as is commercially reasonable without further order of the Bankruptcy Court. If such failure to consummate the purchase is the result of a breach by the Winning Bidder, such bidder's deposit, if any, shall be forfeited to Sel

After the Sale Hearing, if the Winning Bid has been selected and the sale of the Assets to the Winning Bidder has been approved by the Bankruptcy Court, deposits given by bidders who are not the Winning Bidder shall be returned as soon as practicable. In the event the Debtors select a Qualified Bid submitted from an entity other than the Lead Bidder, the Purchase Agreement shall be deemed terminated, the Cash Deposit shall be returned to the Lead Bidder as soon as practicable and the breakup fee, if any, shall be due and payable, at the closing of the sale.

**EXHIBIT B**

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| In Re: | ) | In Proceedings Under Chapter 11 |
| | ) | |
| **ATCHISON CASTING CORPORATION,** | ) | Case No. 03-50965-JWV |
| et al., | ) | Joint Administration |
| Debtors. | ) | |

**NOTICE OF HEARING, AUCTION AND BID PROCEDURES**

    **PLEASE TAKE NOTICE** that, upon the <u>Motion Under Sections 105(a), 363 and 365 of the Bankruptcy Code to (i) Approve Auction and Bid Procedures, (ii) Approve the Sale of Substantially All of the Business and Assets of Inverness Castings Group, Inc. Outside the Ordinary Course of Business Free and Clear of Liens and Interests, (iii) Assume and Assign Unexpired Contracts and Leases and (iv) Set a Date for a Sale Hearing</u> (the "Motion"), a hearing (the "Sale Hearing") to approve the highest or best bid at the Auction described below has been scheduled before the Honorable Jerry W. Venters, the United States Bankruptcy Judge, on **October 20, 2003, at 2:30 p.m.** at the United States Bankruptcy Court for the Western District of Missouri, Courtroom 6A, 400 East Ninth Street, Kansas City, Missouri (the "Court"). At the Sale Hearing the Court shall further consider the assumption and assignment of executory contracts and/or unexpired leases and the proper cure amount needed for such assumption and assignment. Unless otherwise defined herein, capitalized terms shall have the meaning defined in the Motion.

    **PLEASE TAKE FURTHER NOTICE** that, prior to the Sale Hearing, Debtors shall conduct an Auction of Debtors' Assets, as further described in the proposed Asset Sale and Purchase Agreement (available on request to Debtors' counsel), pursuant to Section 363 of the Bankruptcy Code free and clear of all liens, claims and encumbrances, including, but not limited to, any right(s) of first refusal or similar protective right alleged by any party against the Seller or the Assets being sold, pursuant to the terms and conditions contained in the Auction and Bid Procedures attached hereto as Exhibit 1:

    **FOR FURTHER INFORMATION**, contact the Debtors' counsel listed below.

                                        Mark G. Stingley, Mo. #26071
                                        BRYAN CAVE LLP
                                        3500 One Kansas City Place
                                        1200 Main Street
                                        Kansas City, Missouri  64105
                                        Telephone:  (816) 374-3200
                                        Telecopy:   (816) 374-3300

                                        Attorneys for Debtors and Debtors in Possession

## EXHIBIT 1

## Auction and Bid Procedures

Seller,[1] as an administratively consolidated debtor in the United States Bankruptcy Court (the "Bankruptcy Court") for the Western District of Missouri in Case No. 03-50965, has entered a Letter of Intent (the "LOI"), the terms of which are to be incorporated into an Asset Purchase Agreement (the "Purchase Agreement"), acceptable to Harris Trust and Savings Bank as agent for the lenders ("Agent") and Teachers Insurance and Annuity Association of America as a secured lender ("TIAA") no later than October 1, 2003. The consummation of the transaction contemplated by the Purchase Agreement is subject to the procedures described herein. Seller shall conduct an auction of the Seller's Transferred Assets (as defined in the LOI), pursuant to Section 363 of the Code, pursuant to the follow

1. Submission of Competing Bids. Any person (other than the Buyer as defined in the LOI (the "Lead Bidder")) that would like to purchase the Transferred Assets must submit a bid (a "Competing Bid") prior to 5:00 p.m. on October 13, 2003 (the "Competing Bid Deadline"). Each Competing Bid must (i) be in writing; (ii) when considered with all other Competing Bids comprise consideration in an amount equal to or greater than the aggregate consideration made by the Lead Bidder and meeting the requirements of it being at the Alternative Minimum Purchase Price (as defined below); (iii) specify the property that is being bid upon; (iv) identify the bidder and the members of its investor group, as applicable; (v) provide information to demonstrate to the satisfaction of the Seller, the Agent and TIAA the financial wherewithal of the bidder to consummate the proposed transaction; (vi) include a copy of the LOI and/or the Purchase Agreement based upon the LOI signed by the bidder (with any changes from the LOI and/or Purchase Agreement with the Lead Bidder marked electronically); (vii) specify which leases and executory contracts of the Seller are to be assumed and the manner in which the cure amounts will be satisfied by the Competing Bidder; (viii) be on generally the same terms and conditions as the LOI and/or the Purchase Agreement except for the price (*ie*. Competing Bidders are not required to assume the same assets and liabilities as the Lead Bidder); and (ix) be accompanied with a cash Deposit equal to the Deposit set forth in the LOI. Competing Bids should be submitted to the Seller's investment banker, W. Y. Campbell & Company, One Woodward Avenue, 26th Floor, Detroit, MI 48226, attn: Brian Dragon, bdragon@WYCampbell.com, (313) 496-9000. Potential bidders may obtain copies of the LOI and/or the Purchase Agreement with the Lead Bidder from Mr. Dragon.

---

[1]/ All capitalized terms not defined herein shall bear as their meanings the definitions ascribed to them in the Motion under Sections 105(a), 363 and 365 of the Bankruptcy Code to (i) Approve Auction and Bid Procedures, (ii) Approve the Sale of Substantially All of the Business and Assets of Inverness Castings Group, Inc. Outside the Ordinary Course of Business Free and Clear of Liens and Interests, (iii) Assume and Assign Unexpired Contracts and Leases and (iv) Set a Date for a Sale Hearing.

Seller, Agent and TIAA, in their discretion and after consultation with counsel for the Creditors' Committee, will qualify potential bidders according to their financial qualifications to consummate any purchase of the Transferred Assets.

2. Credit Bid. Parties invoking credit bid rights under Bankruptcy Code § 363(k) are not required to deposit cash and do not have to mark up or file their own Purchase Agreement if they do not propose to have any agreement beyond the

3. Information to be Provided. Upon written request to the Sellers by any person interested in submitting a bid for the Transferred Assets, the Seller shall, upon execution by such person of a confidentiality agreement and demonstration of the intent to timely consummate a transaction in terms of scope and value that is of interest to the Seller, provide such person with access to relevant business and financial information that will enable such person to evaluate the Transferred Assets for the purpose of submitt

4. Lead Bid. The Lead Bidder has been granted certain bid protections as follows: (i) a break-up fee of $250,000.00 (the "Break-up Fee"); and (ii) requiring that Seller will not accept any bid from any other party or parties (an "Alternative Purchaser") that does not deliver aggregate consideration equal to or greater than the amount being bid by the Lead Bidder for the Transferred Assets (the "Alternative Minimum Purchase Price").

In the event the Lead Bidder has executed a Purchase Agreement and either (a) Seller commits a default under the Purchase Agreement that causes the transaction not to close or Seller receives a Competing Bid from an Alternative Purchaser and consummates a transaction involving the sale of the Transferred Assets to an Alternative Purchaser pursuant to these Auction and Bid Procedures for a purchase price equal to or greater than the Alternative Minimum Purchase Price; or (b) if Seller consummates a sale of the Assets to any purchaser within 365 days after the date of the court order approving these Auction and Bid Procedures, the Lead Bidder shall at the closing of the sale of the Assets to the Alternative Purchaser receive the Break-up Fee. The Lead Bidder shall not be entitled to the Break-up Fee if the Lead Bidder commits a default under the Purchase Agreement that causes the transaction not to close or if other circumstances exist that under the Purchase Agreement preclude the payment of the Break-up Fee to the Lead Bidder. The Lead Bidder shall not be entitled to the Break-up Fee if the sale to an Alternative Purchaser is not consummated on or before one year after the Sale Hearing (as defined below), unless the Alternate Purchaser is an Affiliate (as the term is defined in 11 U.S.C. § 101(2)) of Seller, in which event the Break-Up Fee shall be payable to the Lead Bidder whenever the sale of the Transferred Assets to the Affiliate occurs and regardless of whether a Competing Bid was received from such Affiliate. If a Competing Bid indicates that it seeks the assumption and assignment of certain executory contract(s) or unexpired lease(s), the bid must

specify the Competing Bidder's agreement to assume the cure costs of such contracts(s) or lease(s) and include sufficient information to permit the Bankruptcy Court, Seller, the DIP Lenders, the Creditors' Committee, and the affected non-debtor party to the applicable contract or lease to determine the proposed assignee's ability to comply with Section 365 of the Code (to the extent applicable), including providing adequate assurance of such assignee's ability to perform in the future.

5.  Auction. If one or more Competing Bids have been received prior to the Competing Bid Deadline, then at 1:30 p.m. on October 14, 2003, or such other date as the Bankruptcy Court may determine, Seller shall conduct an auction of the Assets at the offices of Bryan Cave LLP, 1200 Main Street, Suite 3500, Kansas City, Missouri 64105 (the "Auction"). Each Competing Bid submitted at the Auction must comply with the procedures set forth herein.

Parties invoking credit bid rights under Bankruptcy Code § 363(k) shall be entitled to exercise such rights at the Auction. Each entity seeking to bid at the Auction must (i) be the Lead Bidder or have submitted a Competing Bid as provided above prior to the Competing Bid Deadline and (ii) be deemed a qualified bidder by the Debtor and Agent in consultation with the Committee, and appear in person at the Auction or through a duly authorized representative physically present at the Auction.

In the event no Qualified Bids are submitted, the Debtors will not hold the Auction and will proceed to seek approval of the Purchase Agreement with Lead Bidder at the Sale Hearing defined below. Notwithstanding the foregoing, in the event the Auction is not held, parties invoking credit bid rights under Bankruptcy Code § 363(k) shall be entitled to exercise such rights at the Sale Hearing. Parties intending to exercise such rights under 363(k) shall use their best efforts to provide one (1) business days notice to the Debtor, the Lead Bidder, and the Creditors Committee of their intentions to exercise such rights at the Sale Hearing.

If Seller receives one or more Competing Bids prior to the Competing Bid Deadline which satisfy the bid requirements, each qualified bidder, and the Lead Bidder shall have the right (and opportunity) to continue to improve its bid at the Auction. All such additional bids must exceed the then highest bid by no less than .5% of the cash portion of the Purchase Price (as set forth in the Purchase Agreement with the Lead Bidder) or such other increment as announced at the Auction. Competing Bidders are not required to assume the same assets and liabilities of the Lead Bidder.

Seller, Agent and TIAA, after consultation with the Creditors' Committee, will select the bid at the conclusion of the Auction which it believes to be the highest or best bid for the Assets ("Winning Bid"). Seller, Agent and TIAA, after consultation with the Creditors'

Committee, reserve the right to select the best bid, even if not the highest bid. The determination of the Winning Bid shall remain, however, subject to Bankruptcy Court approval. Seller, Agent and TIAA, after consultation with the Creditors' Committee, shall take into account the value, if any, of any assumption of pension liabilities when selecting the Winning Bid. The Winning Bidder must complete and sign all agreements or other documents with Seller evidencing and containing the terms and conditions upon which its Winning Bid was made before the Auction is concluded.

6. Sale Hearing. On October 20, 2003, at 2:30 p.m., or such other date and time as Seller may request, subject to Bankruptcy Court approval, the Bankruptcy Court shall hold a hearing to determine whether to approve the Winning Bid accepted by Seller as the highest or best bid at the Auction (the "Sale Hearing"). If the Lead Bidder objects to Seller's determination of an authorized Competing Bid as the highest or best bid, the Lead Bidder's sole and exclusive remedy shall be to bid under protest at the Auction and have standing at the Sale Hearing to contest Seller's determination.

7. Cure Amounts. At least ten days prior to the Sale Hearing, the order approving these procedures shall be served on (i) all parties to executory contracts and unexpired leases that could be assumed and assigned, together with a statement of the Debtors as to the current intention of the Lead Bidder regarding its intention on accepting the assignment of such assumed executory contracts and/or unexpired leases, along with the proposed amount due for each such contract and lease under Bankruptcy Code § 365(b) and (ii) all parties holding liens, claims or encumbrances against assets proposed to be sold free and clear of such liens, claims and encumbrances. If any Competing Bid is received at the Auction, notice shall be immediately sent to all parties to the executory contracts and/or unexpired leases regarding the Competing Bidder's intentions concerning the executory contracts or unexpired leases. Furthermore, all parties to executory contracts and/or unexpired leases that are proposed to be assumed and assigned and who do not agree with the proposed assumption and assignment and/or the proposed cure amounts shall at least one (1) day prior to the Sale Hearing file an objection with the Bankruptcy Court and serve such objection on the Seller, Agent, TIAA and the Creditors Committee objecting to such assumption and assignment and/or the proposed cure account with a statement as to their suggested cure amount.

8. Failure of Winning Bidder to Consummate Sale. Provided that the Lead Bidder is the successful bidder at the Auction and the bid is approved at the Sale Hearing, the closing of the sale of the Transferred Assets shall be five (5) business days following the entry of an order of the Bankruptcy Court approving the sale, unless extended by agreement of the Seller and the Agent. If the Lead Bidder is not the

KC01DOCS\646786.5    13

successful bidder at the Auction then the closing of the bid that was the highest and best bid at the Auction that is approved at the Sale Hearing will occur on or before November 21, 2003, unless extended by agreement between the Seller and the Agent. If for any reason a Winning Bidder fails to consummate a sale of the Assets, or any part thereof, the offeror of the second highest or best bid (subject to same reservations) for the Assets (as determined by Seller, after consultation with the Agent, TIAA, the DIP Lenders and the Creditors' Committee), will automatically be deemed to have submitted the highest and best bid and Seller is authorized to effect the sale of the Assets, or any part thereof, to such offeror as soon as is commercially reasonable without further order of the Bankruptcy Court. If such failure to consummate the purchase is the result of a breach by the Winning Bidder, such bidder's deposit, if any, shall be forfeited to Sel

After the Sale Hearing, if the Winning Bid has been selected and the sale of the Assets to the Winning Bidder has been approved by the Bankruptcy Court, deposits given by bidders who are not the Winning Bidder shall be returned as soon as practicable. In the event the Debtors select a Qualified Bid submitted from an entity other than the Lead Bidder, the Purchase Agreement shall be deemed terminated, the Cash Deposit shall be returned to the Lead Bidder as soon as practicable and the breakup fee, if any, shall be due and payable, at the closing of the sale.