**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| ATCHISON CASTING CORPORATION, et al | ) ) | Case No. 03-50965-JWV |
| | ) | Joint Administration |
| Debtor. | | |

**ORDER (A) APPROVING ASSET PURCHASE AGREEMENT BY AND BETWEEN INVERNESS CASTINGS GROUP, INC., AS DEBTOR AND DEBTOR-IN-POSSESSION AND ICG ACQUISITION COMPANY, (B) AUTHORIZING (I) SALE OF SUBSTANTIALLY ALL OF THE BUSINESS AND ASSETS OF INVERNESS CASTINGS GROUP, INC. OUTSIDE THE ORDINARY COURSE OF BUSINESS FREE AND CLEAR OF LIENS AND INTERESTS AND (II) ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BUYER AND ESTABLISHING CURE AMOUNTS WITH RESPECT THERETO, AND (C) <u>GRANTING RELATED RELIEF</u>**

Presently before the Court is the Motion of Inverness Castings Group, Inc. as a debtor and debtor in possession in Case No. 03-50971-JWV (the "Debtor"), which case was administratively consolidated into the case of Atchison Casting Corporation, Case No. 50965-JWV, which motion is seeking (i) to approve the sale of substantially all of the business and assets of Inverness Castings Group, Inc. outside the ordinary course of business free and clear of liens and interests and (ii) to assume and assign unexpired contracts and leases (the "Sale Motion"). The Sale Motion seeks entry of a combined order under Sections 105, 363, and 365 of the Bankruptcy Code (11 U.S.C. §§ 101-1330) and Federal Rules of Bankruptcy Procedure 2002, 6004, 6006, and 9015 authorizing (i) the sale by Debtor of substantially all of the assets of the Debtor pursuant to that certain Asset Purchase Agreement (the "Asset Purchase Agreement"), attached hereto as Exhibit A, that was negotiated and the terms presented to the Court on October 20, 2003 during the course of the Sale Hearing (collectively, the "Assets") to ICG

KC01DOCS\654593.2

Acquisition Company ("Buyer") and (ii) the assumption and assignment to Buyer of certain unexpired leases and executory contracts pursuant to the Asset Purchase Agreement. The Sale Motion has been served by the Debtor on all parties required by the Court, and the Court scheduled and conducted a hearing on the Sale Motion at 2:30 p.m. on October 20, 2003 (collectively, the "Sale Approval Hearing").

The Debtor has certified that notice of the Sale Approval Hearing was provided by proper service of an order entered by this Court on September 16, 2003, concerning the procedures to be followed in conducting the sale (the "Bidding Procedures Order") and of the Sale Motion; the Court having found that the service of the Bidding Procedures Order, the Sale Motion and the notice of the Sale Approval Hearing is sufficient under the circumstances for the purposes of Federal Rules of Bankruptcy Procedure 2002(a)(2), (i), (j) and (k), 6004(a) and (c), and 6006 (a) and (c), and to the extent necessary the Court shortens the time period necessary for Notice of the Sale Approval Hearing under rule 9006; and notice is not required under 11 U.S.C. §363(b)(2), that no other or further notice is necessary; the Court having considered the presentations and proffers by counsel and all objections to the Sale Motion, and the Court being fully advised in the premises and having considered the relief sought in the Sale Motion and having found good cause to grant the relief requested thereby:

**THIS COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.  The Court has jurisdiction to hear and determine the Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334.

B.  Venue is proper pursuant to 28 U.S.C. § 1409(a).

C. Determination of the relief requested by the Sale Motion is a "core" proceeding under 28 U.S.C. § 157(b)(2)(A) and (N). The relief requested by the Sale Motion is predicated upon Sections 105, 363, and 365 of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2002, 6004, 6006, and 9014.

D. The Debtor has followed the procedures for giving notice of the Sale Motion and the Sale Approval Hearing as set forth in the Bidding Procedures Order.

E. Proper, timely, adequate, and sufficient notice of the Sale Motion and the Sale Approval Hearing has been provided in accordance with Section 102(1) of the Bankruptcy Code, Federal Rules of Bankruptcy Procedure 2002, 6004, 6006, 9006 and 9015, due process of law, and the Bidding Procedures Order, and no further notice of the Sale Motion, the Sale Approval Hearing, or the entry of this order is required.

F. A reasonable opportunity to object or to be heard regarding the relief requested by the Sale Motion has been afforded to all interested persons and entities, including (i) all parties that have been previously contacted in connection with the prepetition marketing and sale process and other potential qualified bidders known to the Debtor; (ii) the Office of the United States Trustee; (iii) counsel to the Unsecured Creditors Committee; (iv) all creditors holding a lien or secured claim; (v) all governmental agencies required to receive notice of proceedings under the Federal Rules of Bankruptcy Procedure and any local bankruptcy rules; (vi) all non-debtor parties to unexpired leases or executory contracts; and (vii) all entities who have requested notice pursuant to Bankruptcy Rule 2002. Further, a reasonable opportunity has been afforded any interested person or entity to make a higher and better offer to purchase the Assets upon the terms and conditions and within the time period set forth in the Bidding

Procedures Order. Further no notice is required to be given under Section 363(b)(2) because Section 7A of the Clayton Act does not apply.

G. It is uncontroverted that (i) subject to entry of this order, the Debtor has full corporate power and authority to consummate the transactions hereunder; (ii) subject to entry of this order, the Debtor has been duly and validly authorized by all necessary corporate action to agree to the terms contained herein and to file the Sale Motion; and (iii) no consents or approvals, other than the approval of this Court, are required for the Debtor to consummate such transactions.

H. Sale of the Assets as provided in this order, including without limitation the assumption and assignment of those certain executory contracts and unexpired leases that are identified in the attached Exhibit B (the "Assumed and Assigned Executory Contracts and Unexpired Leases"), reflects the exercise of the Debtor's sound business judgment.

I. Approval of the relief requested by the Sale Motion and consummation of the sale of the Assets at this time are in the best interests of the Debtor, its creditors, other parties in interest, and of the estate. The Court finds that the Debtor has articulated good and sufficient business justification for the sale of the Assets pursuant to Section 363(b) of the Bankruptcy Code, including arm's length negotiation, "best price" after out-of-court marketing efforts. Additionally, the Court incorporates its findings of fact made on the record at the conclusion of the Sale Hearing as reasons why the Sale Motion should be granted.

J. The offer by Buyer represents the highest and best offer for the Assets, and the purchase price for the Assets (the "Purchase Price") is (i) fair and reasonable, (ii) will provide a greater recovery for the Debtor's creditors than would be provided by any other

practical available alternative, and (iii) constitutes reasonably equivalent and fair market value under the Bankruptcy Code and applicable nonbankruptcy law.

    K. The Buyer has provided adequate assurance, pursuant to Section 365 of the Bankruptcy Code, of Buyer's future performance under the Assumed and Assigned Executory Contracts and Unexpired Leases.

    L. The assumption and assignment of the Assumed and Assigned Executory Contracts and Unexpired Leases is in the best interests of the Debtor, its creditors, other parties in interest, and of the estate, and is in accordance with the provisions of Section 365 of the Bankruptcy Code.

    M. The terms of the sale by Debtor to Buyer were negotiated, proposed, and entered into by the parties without collusion, in good faith, and from "arm's length" bargaining positions.  The Buyer is a good faith buyer as defined pursuant to Section 363(m) of the Bankruptcy Code and is entitled to the protections afforded thereby.  Neither the Debtor nor the Buyer has engaged in any conduct that would cause or permit the sale of the Assets to be avoided under Section 363(n) of the Bankruptcy Code.  The Asset Purchase Agreement has been sent to all those parties that requested a copy of the Asset Purchase Agreement.

    N. This is a final order and enforceable upon entry (the "Sale Order").  To the extent necessary under Federal Rules of Bankruptcy Procedure 5003, 9006, 9014, 9021, and 9022, and due to the high likelihood of a very rapid decline in the value of the Assets, there is no just reason for the delay in the implementation of this Sale Order, and therefore the ten-day stay imposed by Federal Rule of Bankruptcy Procedure 6004(g) and 6006(d) shall not apply to the transactions contemplated by this Sale Order and the Buyer will be acting in good faith within the meaning of Section 363(m) of the Bankruptcy Code in immediately closing the transactions

contemplated by the terms of this Sale Order following entry of this Sale Order, including without limitation the assumption and assignment of the Assumed and Assigned Executory Contracts and Unexpired Leases.

O. The transfer of the Assets and the assumption and assignment of the Assumed and Assigned Executory Contracts and Unexpired Leases pursuant to the terms of this Sale Order (i) are or will be legal, valid, and effective transfers of property of the Debtor's estate to the Buyer, and (ii) vest or will vest the Buyer with all right, title, and interest in and to the Assets free and clear of all liens, claims, interests, licenses, sublicenses, assignments, and encumbrances under Section 363(f) of the Bankruptcy Code. Those nondebtor parties with liens, claims, interests, sublicenses, assignments, or encumbrances as to the Assets who did not object, or who withdrew their objections, or whose objections have been overruled on the merits, to the Sale Motion and the Asset Purchase Agreement are adequately protected by either distributing the sale proceeds to such parties or having their liens, claims, interests, licenses, sublicenses, assignments, or encumbrances attach to the cash proceeds from the sale of the Assets as provided in this Sale Order, against or in which they assert such lien, claim, encumbrance, license, sublicense, assignment, or interest to the extent valid, enforceable, and ultimately attributable to the Assets.

P. Except for those obligations expressly assumed, the transfers of the Assets and the assumption and assignment of the Assumed and Assigned Executory Contracts and Unexpired Leases do not subject the Buyer to any debts, liabilities, obligations, commitments, responsibilities, or claims of any kind or nature whatsoever, whether known or unknown, contingent or otherwise, existing as of the date hereof or hereafter arising, of, against or by the Debtor, any affiliate of Debtor, or any other person by reason of such transfers, rejections,

assignments and/or solicitations under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia applicable to such transactions.

Q.   The sale of the Assets to the Buyer is a prerequisite to the Debtor's ability to confirm and consummate a plan or plans of liquidation; therefore, the transactions contemplated by this Sale Order and the Asset Purchase Agreement are a sale in contemplation of a plan and, accordingly, a transfer pursuant to Section 1146(c) of the Bankruptcy Code, which shall not be taxed under any law imposing a stamp tax or similar tax.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.   The Bidding Procedures Order is hereby ratified and reaffirmed in all respects.

2.   The Sale Motion is granted to the extent set forth herein.

3.   One objection was filed to the Sale Motion by Wells Fargo Equipment Finance, Inc. (the "Wells Fargo Objection").  That objection was a limited objection directed to the cure amounts owed for the assumption and assignment of certain schedules under Wells Fargo's Master Lease 99109 (the "Wells Fargo Lease").  The Wells Fargo Objection is sustained and the amount needed to cure Equipment Schedule 3 (i.e., 10047272-703) of the Wells Fargo Lease is $6,987.13.  Further, the amount necessary to cure Equipment Schedule 4 (i.e., 10047472-702) of the Wells Fargo Lease is $3,222.40.  All other objections, if any, to the Sale Motion or the relief requested therein that have not been withdrawn, waived, or settled are overruled on the merits.

4.   The terms and conditions of this Sale Order, and the transactions contemplated hereby, are hereby approved in all respects.

5. The sale of the Assets pursuant to the terms of this Sale Order is hereby authorized and directed under Section 363(b) of the Bankruptcy Code. The Asset Purchase Agreement, and all ancillary documents and all of the terms and conditions thereof, are hereby approved in their entirety.

6. Pursuant to Sections 363(b) and 365 of the Bankruptcy Code, the Debtor and its parent corporation, Atchison Casting Corporation, are hereby authorized, directed, and empowered to fully assume, perform under, consummate, and implement the relief granted by the terms of this Sale Order, together with executing and delivering all additional instruments and documents that may be reasonably necessary or desirable to implement this Sale Order and to take all further actions as may reasonably be requested by the Buyer for the purpose of assigning, transferring, granting, conveying, and conferring to the Buyer, or reducing to possession, any or all of the Assets as may be necessary or appropriate to the performance of the obligations and closing of the sale contemplated by this Order and the Asset Purchase Agreement.

7. For the reasons stated herein, closing on the transactions contemplated by this Sale Order and as set forth in the Asset Purchase Agreement shall be allowed to occur.

8. Pursuant to Sections 105(a) and 363(f) of the Bankruptcy Code, except as provided herein, the Assets shall be transferred to the Buyer free and clear of all liens, claims as defined in Bankruptcy Code § 101(5), encumbrances, licenses, sublicenses, assignments, or interests of any kind whatsoever, including without limitation any theory of successor liability, *de facto* merger or substantial continuity, whether based in law or equity, and unless assumed in the Asset Purchase Agreement, employee benefit obligations and collective bargaining agreements and/or rights or procedures arising under collective bargaining agreements, Debtor's

environmental liabilities, any security interests, mortgage, lien, charge against or interest in property, adverse claim, claim of possession, license or restriction of any kind, including, but not limited to any restriction on the use, receipt of income or other exercise of any attributes of ownership or any option to purchase, option, charge or retention agreement which is intended as a security or other matters of any person or entity that encumber or relate to, or purport to encumber or relate to, the Assets, and any liens, claims, encumbrances, licenses, sublicenses, assignments, or interests of the United States, any state, municipality, or other governmental unit. All such liens, claims, encumbrances, licenses, sublicenses, assignments, or interests of any kind whatsoever including, but not limited to, all liens and security interests granted in favor of the DIP Lenders and Secured Lenders under the Final DIP Financing Order, Post-Petition Credit Agreement, and Pre-Petition Agreements (as such terms, when used herein, are defined in the Final DIP Financing Order), as applicable, shall attach to the proceeds of the transactions contemplated by this Sale Order (the "Sale Proceeds") in the order of their priority, with the same validity, force, and effect which they now have against the Assets as provided for in the Final DIP Financing Order, the Post-Petition Credit Agreement and the Pre-Petition Agreements, and the Sale Proceeds shall be subject to such liens and security interests, subject to these costs and expenses that are to be paid from the proceeds as permitted pursuant to the Post-Petition Credit Agreement and Final DIP Financing Order and approved by the DIP Agent and/or Court to the extent required thereunder.

9.     All persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, licensees, lenders, trade and other creditors, and other present and future claimants whether or not holding liens, claims, encumbrances, licenses, sublicenses, assignments, or interests of any kind or nature

whatsoever against or in the Debtor or the Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtor, the Assets, the operation of the Debtor's businesses prior to the Closing Date, or the transfer of the Assets to the Buyer, are hereby forever barred, estopped, and permanently enjoined from asserting against the Buyer, its successors or assigns, its property, or the Assets, such persons' or entities' liens, claims, encumbrances, licenses, sublicenses, assignments, or interests, except only for liabilities expressly assumed and assigned hereunder or under the operative documents between Buyer and Debtor.

10. Except as provided herein, the transfer of the Assets to the Buyer, on the terms contained in this Sale Order, constitutes a legal, valid, and effective transfer of the Assets, and shall vest the Buyer with all right, title, and interest of the Debtor in and to the Assets free and clear of all liens, claims, encumbrances, licenses, sublicenses, assignments, and interests of any kind or nature whatsoever.

11. The transfer of the Assets, on the terms contained in this Sale Order, is a transfer pursuant to Section 1146(c) of the Bankruptcy Code in that the transactions contemplated by this Sale Order are determined to be under or in contemplation of a plan to be confirmed under Section 1129 of the Bankruptcy Code, and accordingly shall not be taxed under any federal, state, local, municipal or other law imposing or claiming to impose a stamp tax or a sale, transfer, or any other similar tax on any of the Debtor's transfers or sales of real estate, personal property, or other assets (including the Assets) owned by them.

12. Pursuant to Sections 105(a) and 365 of the Bankruptcy Code, the assumption and assignment of the Assumed and Assigned Executory Contracts and Unexpired

Leases to the Buyer are hereby approved, and the requirements of Section 365(b)(1) of the Bankruptcy Code with respect thereto have been satisfied, in connection with the transactions contemplated herein, including but not limited to the finding that the cure amounts listed in Exhibit B are accurate and will be paid by the Buyer.

13. The Debtor and to the extent necessary its parent, Atchison Casting Corporation, are hereby authorized and directed in accordance with Sections 105(a) and 365 of the Bankruptcy Code to (i) assume and assign to the Buyer the Assumed and Assigned Executory Contracts and Unexpired Leases effective upon the Closing Date of the transactions contemplated by this Sale Order and the payment of the Cure Payments by the Buyer or Seller as contemplated in the Asset Purchase Agreement, except as provided herein, free and clear of all liens, claims, encumbrances, licenses, sublicenses, assignments, and interests of any kind or nature whatsoever; (ii) execute and deliver to the Buyer such documents or other instruments as may be necessary to assign and transfer the Assumed and Assigned Executory Contracts and Unexpired Leases, and (iii) execute and deliver to Buyer such documents or other instruments as may be necessary for implementing and completing the transaction contemplated by this Sale Order.

14. Notwithstanding any provision in the Assumed and Assigned Executory Contracts and Unexpired Leases that prohibits, restricts, or conditions such assignment or transfer and, to the extent set forth in Section 365(k) of the Bankruptcy Code, the Debtor shall be relieved from any further liability with respect to the Assumed and Assigned Executory Contracts and Unexpired Leases after such assumption and assignment of the Assumed and Assigned Executory Contracts and Unexpired Leases to the Buyer upon the Closing Date.

15. Except as otherwise expressly provided for in this Order, on or before the Closing Date, each of the Debtor's creditors is authorized and hereby directed to, and upon Debtor's request will, execute such documents and take all other actions as may be necessary to release its liens, claims, encumbrances, licenses, sublicenses, assignments, or interests in the Assets, if any, as such liens, claims, encumbrances, licenses, sublicenses, assignments, and interests may have been recorded or may otherwise exist with all such liens, claims, and security interests, including those of the DIP Lenders and Secured Lenders, attaching to the Sale Proceeds as provided for in paragraph 8.

16. Except as provided herein, this Sale Order (i) is a determination that, on the Closing Date, all liens, claims, encumbrances, or interests of any kind or nature to use the property purchased by Buyer, whatsoever existing with respect to the Assets prior to the Closing have been unconditionally released, discharged, and terminated, as provided herein, and that the conveyances described therein have been effected; and (ii) shall be binding upon and govern the acts of all persons or entities including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Assets.

17. Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by this Sale Order.

18. If any person or entity that has filed judgment liens, tax liens, financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing liens, claims, licenses, sublicenses, assignments, or interests with respect to the Assets shall not have delivered to the Debtor prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all liens, claims, encumbrances, licenses, sublicenses, assignments, and interests which the person or entity has with respect to the Assets or otherwise, then (i) upon request by the Buyer, the Debtor is hereby authorized and directed to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Assets; and (ii) the Buyer is hereby authorized to file, register, or otherwise record a certified copy of this Sale Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all liens, claims, encumbrances, and interests in the Assets of any kind or nature whatsoever.

19. All entities that are presently, or on the Closing Date may be, in possession of some of all of the Assets are hereby directed, promptly upon demand, to surrender possession of the Assets to the Buyer.

20. Except as provided herein, the Buyer shall not be liable for any claims against the Debtor or any of its predecessors or affiliates, and the Buyer shall have no successor or vicarious liabilities of any kind or character, whether known or unknown, as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, including without limitation any claims of or against the Debtor, any affiliates of the Debtor, and the Assets for any and all claims by any person or entity whatsoever, including, but not limited to, liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to

the operation of the businesses prior to the Closing Date. The Buyer shall have no liability for any claim by any person or entity against the Debtor, any affiliates of Debtor, or the Assets which is pending in a court of competent jurisdiction anywhere in the United States or elsewhere as of the Closing Date; rather, any liability as may be established for such claims shall attach only to the proceeds of the purchase price according to such claim's validity and priority under application law.

21. Except as provided herein, under no circumstances shall the Buyer be deemed a successor of or to the Debtor for any lien, claim, encumbrance, license, sublicense, assignment, or interest against or in the Debtor or the Assets of any kind or nature whatsoever. Except as provided herein and in the Asset Purchase Agreement, the sale, transfer, assignment, and delivery of the Assets shall not be subject to any liens, claims, encumbrances, licenses, sublicenses, assignments, or interests, and any liens, claims, encumbrances, licenses, sublicenses, assignments, or interests of any kind or nature whatsoever shall remain with, and continue to be obligations of, the Debtor. Except as provided herein, all persons or entities holding any liens, claims, encumbrances, licenses, sublicenses, assignments, or interest against or in the Debtor or the Assets of any kind or nature whatsoever shall be, and hereby are, forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing such liens, claims, encumbrances, licenses, sublicenses, assignments, or interests of any kind or nature whatsoever against the Buyer, its property, its successors and assigns, or the Assets with respect to any lien, claim, encumbrances, license, sublicense, assignment, or interest of any kind or nature whatsoever such person or entity had, has, or may have against the Debtor, its estate, officers, directors, shareholders, or the Assets, including but not limited to: (i) from commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action or other

proceeding (including, without expressed or implied limitation, any thereof in a judicial, arbitral, administrative or other forum) against or affecting the Purchaser, or the Assets; (ii) from enforcing, levying, attaching (including, without expressed or implied limitation, any prejudgment attachment), collecting or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment, award, decree, or other order against the Purchaser or the Assets; (iii) from creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any lien, or encumbrance against the Purchaser with respect to any interest in the Assets; (iv) from setting off, seeking reimbursement of, contribution from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount from the Buyer or the Assets against any liability owed to Debtor or affecting the Assets.  Following the Closing Date, no holder of a lien, claim, encumbrance, license, sublicense, assignment, or interest against the Debtor or the Assets shall interfere with the Buyer's title to or use and enjoyment of the Assets based on or related to such lien, claim, encumbrance, license, sublicense, assignment, or interest, or any actions that the Debtor may take in its Chapter 11 case.

        22. This Court retains jurisdiction to construe, enforce, and implement the terms and provisions of this Sale Order, any waivers and consents thereunder, and of each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to (i) compel delivery of the Assets to the Buyer, (ii) resolve any disputes arising under or related to the terms of this Sale Order, (iii) interpret, implement, and enforce the provisions of this Sale Order, and (iv) protect the Buyer against any liens, claims, encumbrances, and interests against the Debtor or the Assets, of any kind or nature whatsoever.

23. Nothing contained in any plan of liquidation confirmed in this case or any order of this Court confirming such plan shall conflict with or derogate from the provisions of this Sale Order, as they affect the Buyer.

24. The transfer of the Assets pursuant to the transactions contemplated by this Sale Order shall not subject the Buyer to any liability with respect to the operation of the Debtor's businesses prior to the Closing Date or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, on any theory of law or equity, including, without limitation, any theory of equitable subordination, successor or transferee liability.

25. The transactions contemplated by this Sale Order are undertaken by the Buyer in good faith, as that term is used in Section 363(m) of the Bankruptcy Code. Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the transactions contemplated by this Sale Order shall not affect the validity of such transactions as to the Buyer, unless such authorization is duly stayed pending such appeal. The Buyer is a purchaser in good faith of the Assets, and is entitled to all of the protections afforded by Section 363(m) of the Bankruptcy Code.

26. The terms and provisions of this Sale Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtor, its estate, and its creditors, as well as the Buyer, and its respective affiliates, successors, and assigns, and shall be binding in all respects upon any affected third parties including, but not limited to, all persons or entities asserting any liens, claims, encumbrances, licenses, sublicenses, assignments, or interests against or in the Assets to be sold to the Buyer pursuant to this Sale Order, notwithstanding any subsequent

appointment of any trustee(s) under any chapter of the Bankruptcy Code, as to which trustee(s) such terms and provisions likewise shall be binding.

27. This Sale Order is a final order and enforceable upon entry. To the extent necessary under Rules 5003, 9006, 9014, 9021, and 9022 of the Federal Rules of Bankruptcy Procedures, and due to the high likelihood of a very rapid decline in the value of the Assets, this Court expressly finds that there is no just reason for delay in the implementation of this Sale Order and expressly directs entry of judgment as set forth herein, and the ten-day stay imposed by Federal Rules of Bankruptcy Procedure 6004(g) and 6006(d) are hereby modified and shall not apply to the transactions contemplated by this Sale Order. Time is of the essence in closing the transactions contemplated by this Sale Order, and the Debtor and the Buyer intend to close such transactions as soon as possible; therefore the Debtor is authorized immediately to consummate the sale of the Assets to Buyer without delay, and the Buyer constitutes a purchaser in good faith of the Assets, and is entitled to all of the protections afforded by Section 363(m) of the Bankruptcy Code, in immediately closing the transactions contemplated by this Sale Order. Therefore, any party objecting to this Sale Order must exercise due diligence in filing an appeal and pursuing a stay or risk their appeal being foreclosed as moot.

28. Following the Closing Date, Buyer shall make available to the Debtor or a Trustee, at the Debtor's or Trustee's expense, business records acquired by Buyer in the sale and transferred to Buyer to the extent reasonably requested by the Debtor or Trustee.

29. No bulk sales law of any state applies in any way to the Sale of the Assets hereunder.

30. The Debtors are hereby directed to comply with Section 1.8(b) of the Post-Petition Credit Agreement, as amended, and the Final DIP Financing Order. Without limiting

the generality of the foregoing, the Debtors shall calculate the Sale Proceeds and Net Cash Proceeds (as defined in the Post-Petition Credit Agreement) from the sale and shall direct the Buyer to promptly pay the Sale Proceeds directly to the DIP Agent as and in the manner required by Section 1.8(b) of the Post-Petition Credit Agreement and Final DIP Financing Order for application pursuant to the provisions of the Final DIP Financing Order, Post-Petition Credit Agreement, and/or Pre-Petition Agreements, as applicable. The liens and security interests granted in favor of the DIP Lenders and Secured Lenders under the Final DIP Financing Order, Post-Petition Credit Agreement, and Pre-Petition Agreements, as applicable, shall attach to the Sale Proceeds, regardless of whether such proceeds are held in escrow or an escrow account, and the Sale Proceeds shall be subject to such liens and security interests.

31. The Court's findings of fact and conclusions of law satisfy the requirement of Fed. R. Civ. P. 52 applicable herein by reason of Bankruptcy Rule 9014.

**SO ORDERED** as of October 21, 2003, in Kansas City, Missouri.

/s/ Jerry W. Venters
**JERRY W. VENTERS**
**UNITED STATES BANKRUPTCY JUDGE**

Dated this 21st day of October, 2003.

ORDER SUBMITTED BY:

Mark G. Stingley          MO #26071
BRYAN CAVE LLP
3500 One Kansas City Place
1200 Main Street
Kansas City, Missouri 64105
Telephone: (816) 374-3200

Telecopy:    (816) 374-3300

**Attorneys for Debtor and Debtor in Possession**
Stingley to Serve