**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| In re: | ) | In Proceedings Under Chapter 7 |
| | ) | |
| ATCHISON CASTING CORPORATION et al.[1] | ) | Case No. 03-50965 |
| | ) | |
| | ) | (Joint Administration) |
| | ) | |
| | ) | Hon. Jerry W. Venters |
| Debtors. | ) | |
| | ) | |

**FINAL ORDER AUTHORIZING THE USE OF CASH COLLATERAL
FOLLOWING THE TERMINATION OF THE DIP FACILITY AND
FOLLOWING THE DATE OF CONVERSION TO CHAPTER 7,
PROVIDING ADEQUATE PROTECTION THEREFOR PURSUANT TO
SECTIONS 361 AND 363 OF THE BANKRUPTCY CODE AND
MODIFYING THE AUTOMATIC STAY**

THIS MATTER came on for hearing on January 27, 2004 at 3:30 p.m. (the *"Interim Hearing"*) at which time an Interim Cash Collateral Order was entered (the *"Interim Order"*). The above-captioned debtors, including Atchison Casting Corporation (the *"Company"*) (collectively, the *"Debtors"*), as debtors and debtors-in-possession in the above-captioned Chapter 11 cases (the *"Chapter 11 Cases"*), which filed voluntary petitions for reorganization pursuant to Chapter 11 of Title 11, United States Code (the *"Bankruptcy Code"*) on August 4, 2003 (the *"Petition Date"*), and have subsequently converted such cases to Chapter 7 of the Bankruptcy Code (the *"Chapter 7 Cases"*) on January 22, 2004 (the *"Conversion Date"*)[2], have

---

[1] The following entities are Debtors: Atchison Casting Corporation, Amite Foundry & Machine, Inc., Quaker Alloy, Inc., Prospect Foundry, Inc., Inverness Castings Group, Inc., ACC Global Corporation, PrimeCast Incorporated, Empire Steel Castings, Inc., Milwaukee Impellor Castings, Inc. (f/k/a Kramer International, Inc.), LaGrange Foundry, Inc., Pennsylvania Steel Foundry and Machine Co., Springfield Iron Corporation (f/k/a Jahn Foundry Corp.), and Claremont Foundry, Inc.

[2] To the extent applicable herein, all references to the "Debtor" or "Debtors" shall refer to the Chapter 7 Trustee appointed in these cases.

KC01DOCS\670691.1

applied to this Court, along with the Chapter 7 Trustee (the *"Motion"*) for authorization, pursuant to Sections 361, 363(c) and 363(e) of the Bankruptcy Code and Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the *"Bankruptcy Rules"*) for Authority (1) to Use Cash Collateral Following the Termination of the DIP Facility following the Conversion Date and (2) to grant the Collateral Agent[3] and Secured Lenders Replacement Liens and superpriority administrative claim treatment for any use of Cash Collateral and diminution in value of the Pre-Petition Collateral; notice of the Motion having been given pursuant to Bankruptcy Rules 1007(d), 2002 and 4001(b); the Court having reviewed the Motion and being advised that the Collateral Agent and Secured Lenders consent to the Debtors' use of Cash Collateral as that term is defined in Section 363(a) of the Bankruptcy Code (*"Cash Collateral"*) on the terms and conditions as set forth in this order (the *"Order"*) and the Interim Order; the Court having completed a final hearing on the Motion as provided for in Bankruptcy Code §363(c) and Bankruptcy Rule 4001 on February 17, 2004 at 1:30 p.m. (the *"Final Hearing"*); the Court having considered the statements of counsel, and having considered all relevant matters related thereto, and being fully advised in the premises:

Upon the record of the Chapter 11 Cases, the Chapter 7 Cases, the Interim Hearing and Final Hearing, good and sufficient cause appearing therefor, and it appearing to the Court to be in the best interests of the Debtors' estates and creditors;

The Court makes findings of fact and conclusions of law and entered this Order as follows:

(a). Adequate and sufficient notice of the relief sought in the Motion, the Interim Hearing and Final Hearing held with respect thereto has been provided to all persons entitled thereto under Rule 2002 and 4001 of the Bankruptcy Rules and Bankruptcy Code

---

[3] Unless the context hereof shall otherwise require, capitalized terms used herein shall have the same meaning as in the Final Financing Order Authorizing (1) Borrowing with Priority over Administrative Expenses and Secured by Liens on Property of the Estates Pursuant to Section 364(c) and Section 364(d) of the Bankruptcy Code, (2) the Debtors' Use of Cash Collateral and Granting Adequate Protection Therefor Pursuant to Sections 361 and 363 of the Bankruptcy Code, and (3) Modifying the Automatic Stay dated September 24, 2003 (the *"Final DIP Financing Order"*).

§102(1), as required by Bankruptcy Code, has been given to the following parties in interest: the U.S. Trustee, the Chapter 7 Trustee, the Collateral Agent, the Pre-Petition Agent, the Secured Lenders and their respective counsel; the creditors holding the twenty largest unsecured claims against the Debtors' estates; and no further notice of the Motion is necessary.

    (b). This matter constitutes a "core proceeding" within the meaning of 28 U.S.C. §157.

    (c). This Court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334 and 157.

    (d). The Secured Lenders are willing to permit the Chapter 7 Trustee to use Cash Collateral only upon the conditions contained in this Order.

    (e). The conditions required by the Secured Lenders and the Collateral Agent in connection with the Adequate Protection Claim including the use of Cash Collateral are made in good faith.

    (f). It is in the best interest of the Debtors' estates that, in exchange for providing adequate protection to the Secured Lenders, the Chapter 7 Trustee be allowed to utilize Cash Collateral under the terms and conditions set forth herein, as such use is necessary to permit the Chapter 7 Trustee to achieve a successful liquidation of the Debtors' remaining assets for the best interest of all parties.

    (g). The Court hereby adopts and incorporates by reference paragraph (g) of the Final DIP Financing Order as if fully stated herein except to the extent any such liens on the Pre-Petition Collateral have been released by the Collateral Agent in connection with the sales of certain assets of the Debtors after the Petition Date.

(h). The Chapter 7 Trustee has requested that the Secured Lenders permit the Chapter 7 Trustee's use of Cash Collateral in order to provide funds to be used solely for the purposes set forth herein.

(i). Subject to compliance with the conditions of this Order and so long as no Termination Event and Termination Notice (as defined below) in accordance with paragraph 11 occurs, the Chapter 7 Trustee is permitted to use Cash Collateral during the period, in the amount and for the purposes hereinafter set forth.

(j). The Chapter 7 Trustee is hereby authorized on a limited basis to use Cash Collateral only in strict accordance with the terms and conditions provided in this Order. Each of the Secured Lenders and the Collateral Agent is found to be an entity that acted in "good faith" and is entitled to the protection of Section 364(e) of the Bankruptcy Code, to the extent applicable.

(k). This Order is entered pursuant to, and shall be construed and be consistent with Section 363 of the Bankruptcy Code and Bankruptcy Rule 4001(b)(2) to prevent immediate and irreparable harm to the Debtors' estates.

NOW, THEREFORE, IT IS HEREBY ORDERED:

1. Unless expressly consented to by the Collateral Agent to the contrary, the Chapter 7 Trustee shall be, and hereby is, authorized to use Cash Collateral on the terms and conditions as provided in this Order until the earliest of (x) a Termination Event and Termination Notice in accordance with the terms set forth below, or (y) the earlier of the closing of the Debtors' estates or July 31, 2004. The Chapter 7 Trustee is hereby permitted to use Cash Collateral to fund:

> (i) the costs and expenses incurred on and after the Conversion Date of collection and liquidation of any of the Secured Lenders' Collateral that has not been sold, or subject to a purchase agreement that has not closed, prior to the Conversion Date, including, but not limited to, attorney fees and expenses, broker or auctioneer fees and expenses and other closing costs (*"Collection Costs"*);

(ii) costs and expenses of any Chapter 7 trustee or its counsel or professionals for services performed on and after the Conversion Date other than costs and expenses of estate professionals and any Chapter 7 Trustee which constitute Collection Costs (*"Estate Professional Fees")*;

(iii) costs other than Estate Professional Fees (*"Other Estate Recovery Costs")*, relating to services performed or expenses incurred on and after the Conversion Date in connection with prosecuting preference actions, Avoidance Actions, estate actions or collections other than what the Secured Lenders have a lien on under the Final DIP Financing Order (together with Preference Recoveries as defined in paragraph 8 of the Final DIP Financing Order, *"Other Estate Recoveries")*; and

(iv) any other costs of administration of these estates which relate to services performed or liabilities incurred on and after the Conversion Date other than Collection Costs, Estate Professional Fees and Other Estate Recovery Costs (together with Estate Professional Fees and Other Estate Recovery Costs, *"Other Estate Administration Expenses"*)

in the following manner:

A.   Except as provided for in subparagraph B below, as to the sale of or recovery on any Collateral, all Collection Costs attributable to any particular sale which have not previously been paid (i) out of Pattern Return Proceeds (as defined below) or (ii) with the consent of the Collateral Agent out of Net Sale Proceeds (as defined below) from another or separate sale transaction that closes after the Conversion Date, and which are due and owing at the time of the closing of such sale, shall be deducted or otherwise payable from the proceeds of such sale (*"Net Sale Proceeds"*).  Except as provided for in sub-paragraph C below, no Net Sale Proceeds shall be used to fund any portion of Other Estate Administration Expenses or for any other purpose without the express written consent of the Collateral Agent.  The Collateral Agent shall have the right to consent to any sale of its Collateral (including any purchase agreement, term sheet, or terms of any proposed sale transaction) other than Pattern Return Proceeds, and the Chapter 7 Trustee shall not enter into any such purchase agreement or other sale transaction, or file any sale motion pursuant to

section 363 of the Bankruptcy Code with respect to the Collateral, without first obtaining the express written consent of the Collateral Agent unless, in the case no consent is obtained, the Chapter 7 Trustee obtains approval by the Bankruptcy Court.

B.   Notwithstanding subparagraph A above, as to any Cash Collateral received by the Chapter 7 Trustee as the result of pattern returns at the Quaker Alloy facility ("*Pattern Return Proceeds*"), such funds are permitted to be used in the discretion of the Chapter 7 Trustee to fund (i) first, with respect to any particular sale of Collateral, any out-of-pocket Collection Costs that are required to be paid prior to the closing of such transaction, and (ii) second, Other Estate Administration Expenses, *provided,* that the aggregate amount of Cash Collateral used pursuant to this subparagraph other than for Collection Costs shall be included in the Adequate Protection Claim (*i.e.*, a superpriority allowed administrative expense claim) as provided for in paragraph 4 below.

C.   To the extent that Pattern Return Proceeds or Other Estate Recoveries are insufficient to fund any Other Estate Administration Expenses in connection with the administration of these estates when they become due and owing, the Chapter 7 Trustee shall make a written request to the Collateral Agent to use Cash Collateral constituting Net Sale Proceeds (provided such Net Sale Proceeds are in cash and have been received by the Collateral Agent) for such expenses, and the Collateral Agent may agree to the use of its Cash Collateral, at its own discretion, *provided,* that (i) the amounts of Cash Collateral requested to be used by the Chapter 7 Trustee pursuant to this subparagraph shall not, in the aggregate, exceed the lesser of (x) Net Sale Proceeds in possession of the Collateral Agent or (y) $100,000.00 (unless otherwise agreed by the Collateral Agent); and (ii) the aggregate amount of Cash Collateral used pursuant to this subparagraph shall be included in the Adequate Protection Claim (*i.e.*, a superpriority allowed administrative expense claim) as provided for in paragraph 4 below.  Upon request by the Collateral Agent, the Chapter 7 Trustee shall provide the Collateral Agent with an accounting of all Cash Collateral used to fund

Collection Costs, Estate Professional Fees, Other Estate Recovery Costs and/or Other Estate Administration Expenses within two (2) business days after receiving notice of a request from the Collateral Agent.

D. Except as otherwise agreed by the Collateral Agent, the Chapter 7 Trustee shall (i) promptly cause any and all Pattern Return Proceeds and any and all payments constituting Other Estate Recoveries (other than Preference Recoveries, but excluding an amount equal to the Committee Reimbursement Amount as defined below) to be deposited in a designated account at Harris Trust and Savings Bank; and (ii) cause any purchaser of Collateral to wire any and all sale proceeds to the Collateral Agent in the following account at Harris Trust and Savings Bank, with all such proceeds being subject to all applicable liens and Replacement Liens of the Collateral Agent and Secured Lenders, pursuant to the following wire instructions:

> Harris Trust and Savings Bank
> ABA No. 071000288
> Account: 1092154
> Reference: ACC Administration, Inc.

E. The Collateral Agent's and Secured Lenders' rights to object to the amount of any Collection Costs, Estate Professional Fees, Other Estate Recovery Costs, or any Other Estate Administration Expenses is hereby fully reserved and not waived.

F. The Chapter 7 Trustee and her professionals shall use their reasonable best efforts to obtain the cooperation of the Debtors' former officers and employees (*"Former ACC Employees"*) in assisting the Chapter 7 Trustee with the liquidation of any Collateral, but to the extent Former ACC Employees do not cooperate, and such non cooperation is not caused by any acts, omissions or actions of the Chapter 7 Trustee or her professionals, the Chapter 7 Trustee and her professionals shall not be held liable to the Collateral Agent, Pre-Petition Agent, or Secured Lenders in any manner whatsoever as the result of such non-cooperation.

G. Any and all cash proceeds constituting Other Estate Recoveries, including Preference Recoveries (including the Committee Reimbursement Amount), that are not deposited at Harris Trust and Savings Bank shall be subject to all applicable liens and Replacement Liens of the Collateral Agent and Secured Lenders but only to the extent of the Adequate Protection Claim as provided for herein in paragraph 4 and the Committee Reimbursement Amount as provided for in paragraph 8 of the Final DIP Financing Order.

H. Unless the Bankruptcy Court orders otherwise, the Chapter 7 Trustee shall not seek to abandon any real property Collateral pursuant to section 554 of the Bankruptcy Code or otherwise until the earlier of (x) receipt of express written consent from the Collateral Agent with respect to any particular piece of property; or (y) all reasonable efforts by the Chapter 7 Trustee and her professionals to sell any particular property (whether pursuant to section 363 of the Bankruptcy Code or otherwise) have been taken and the Chapter 7 Trustee certifies to the Collateral Agent in writing that all reasonable efforts to effect such sale have been exhausted or are otherwise impracticable.

2. All proceeds of Collateral (including Pre-Petition Collateral or Post-Petition Collateral), shall be paid to the Collateral Agent to be applied as set forth in paragraph 16 hereof, subject to the Chapter 7 Trustee's use of Cash Collateral as permitted herein, or as otherwise expressly agreed to by the Collateral Agent in writing.

3. The Chapter 7 Trustee acknowledges that the Chapter 7 Trustee's use of Cash Collateral will result in the diminution of the Pre-Petition Collateral and the Secured Lenders' interests therein, and the Court, therefore, grants and security interests and liens as adequate protection. As adequate protection for any Post-Petition diminution in the value of the Collateral Agent's and/or each Secured Lender's interests in the Pre-Petition Collateral, including without limitation for any diminution in value caused by the Chapter 7 Trustee's use of the Pre-Petition Collateral and/or Cash Collateral, the Adequate Protection Claim as provided for in paragraph 7

of the Final DIP Financing Order granted to the Collateral Agent for the ratable benefit of each Secured Lender against the Debtors' estates shall continue in full force and effect under the terms of this Order.

4. In order to secure the Adequate Protection Claim, the Replacement Liens on the Collateral as provided for in paragraph 7 of the Final DIP Financing Order granted to the Collateral Agent for the benefit of the Secured Lenders shall continue in the same extent on the Pre-Petition Collateral and Post-Petition Collateral and all proceeds of Pre-Petition and Post-Petition Collateral and with the same priority as provided for in paragraphs 6 and 7 of the Final DIP Financing Order and shall remain in full force and effect under the terms of this Order except to the extent any such Replacement Liens have been released by the Collateral Agent in connection with the sales of certain assets of the Debtors and the settlement of the Surcharge Claim after the Petition Date, and the Replacement Liens shall also attach to Other Estate Recoveries and Preference Recoveries (and any proceeds or funds resulting therefrom) that are to be included in the Adequate Protection Claim as provided for in this paragraph below. The Adequate Protection Claim (subject to the Carve-Out as such term is defined in the Final DIP Financing Order) shall have priority in right of payment over any other obligations now in existence or hereafter incurred by the Debtors and over any and all administrative expenses or priority claims of any kind including as specified in, or ordered pursuant to, §§ 326, 330, 331, 503(b), 506(c), 507(a) or 507(b) and 726 of the Bankruptcy Code, whether arising in the Debtors' previous Chapter 11 Cases or in these Chapter 7 cases to the extent of applicable law in the same manner and extent as provided for in paragraph 7 of the Final DIP Financing Order. Notwithstanding the foregoing, the Adequate Protection Claim shall, at a minimum, be deemed to include the aggregate amount paid out of Cash Collateral to fund all Other Estate Administration Expenses, less an amount equal to Pattern Return Proceeds used to pay Other Estate Administration Expenses up to the aggregate amount of $30,000.00, and such amount shall be first payable to the Collateral Agent out of funds

constituting Other Estate Recoveries prior to any other distribution out of such funds pursuant to section 726 of the Bankruptcy Code or otherwise, *provided, however*, to the extent such funds constitute Preference Recoveries, such amounts shall be payable to the Collateral Agent prior to any other distribution to administrative claimants pursuant to section 726 of the Bankruptcy Code but subsequent to the payment in full satisfaction the amounts due out of Preference Recoveries to the Collateral Agent pursuant to paragraph 8 of the Final DIP Financing Order for reimbursing the Collateral Agent for the amounts due the Collateral Agent for payment of the Committee's professionals' fees and expenses (the *"Committee Reimbursement Amount"*).

5. For the purposes of this Order, paragraph 8 and the last sentence of paragraph 9 of the Final DIP Financing Order shall remain in full force and effect from the date of termination of the DIP Facility and shall be incorporated into this Order as if fully set forth herein. Paragraph 11 of the Final DIP Financing Order, including, but not limited to the finality of the Lien Finding contained therein, shall remain in full force and effect from the date of termination of the DIP Facility and shall be incorporated into this Order as if fully set forth herein.

6. The Chapter 7 Trustee waives irrevocably all rights, if any, she might otherwise assert against the Collateral pursuant to Bankruptcy Code §§ 105, 506(c) and 552(b). No entity in the course of these bankruptcy cases (whether Chapter 11 or subsequent Chapter 7), shall be permitted to recover from the Collateral any cost or expense of preservation or disposition of the Collateral, including, without limitation, expenses and charges as provided in Bankruptcy Code §§506(c) or 552(b) without the prior written consent of the Collateral Agent.

7. Nothing in this Order shall limit the rights of any Secured Lender or the Collateral Agent to assign all of its rights, claims and Pre-Petition Obligations under the Pre-Petition Agreements and this Order.

8. The Collateral Agent or the Secured Lenders may pay the reasonable costs, fees, charges and expenses (including without limitation the reasonable fees and expenses of its counsel

and other professionals and advisors retained or employed by the Collateral Agent) from the proceeds of the Pre-Petition Collateral and proceeds from the Post-Petition Collateral to the extent of the Adequate Protection Claim which would otherwise be applied to pay down the Pre-Petition Obligations and the Collateral Agent and each Secured Lender may make such payments without further application to this Court or notice to any person or entity subject to the right of the Debtors or the Chapter 7 Trustee to request a statement of amounts so paid and to object to any payment of proceeds of Collateral that does not reduce the secured portion of the Pre-Petition Obligations of the Secured Lenders, *provided,* as to the Secured Lenders, to the extent cash is available pursuant to the terms herein and subject to reallocation of such payments as a payment pursuant to the distribution to and application on the applicable Secured Lenders' secured claims and, *provided further,* the Collateral Agent receives copies of all invoices and payments made so that the reallocation can be effected. The Debtors, Chapter 7 Trustee, and U.S. Trustee may object only to the reasonableness of the amount of (and not the Collateral Agent's and Secured Lenders' entitlement to) any such fees, but only in the event section 506(b) of the Bankruptcy Code become applicable.

9.   The automatic stay provisions of Bankruptcy Code §362 are hereby modified to permit (a) the Chapter 7 Trustee and Collateral Agent and Secured Lenders to undertake and perform all acts and take all actions necessary to implement this Order, and (b) the Chapter 7 Trustee to create, and the Collateral Agent to perfect, any and all liens, mortgages and security interests granted hereunder; *provided, however,* that the Collateral Agent shall not be required to file UCC financing statements or other instruments with any other filing authority to perfect any lien, mortgage or security interest granted by this Order or take any other action to perfect such liens, mortgages and security interests; if, however, the Collateral Agent shall, in its sole discretion, elect for any reason to file, record or serve any such financing statements or other documents with respect to such liens and security interests, the Chapter 7 Trustee shall execute

same upon request and the filing, recording or service thereof (as the case may be) shall be deemed to have been made at the time and on the date of the commencement of the Chapter 11 Cases on the Petition Date.

10. The occurrence of any of the following shall constitute a Termination Event (*"Termination Event"*) under this Order and the Secured Lenders shall have no obligation to permit the use of Cash Collateral and the Chapter 7 Trustee's ability to use Cash Collateral shall be terminated upon the giving of written notice thereof by the Collateral Agent to the counsel for the Chapter 7 Trustee, and the Office of the U.S. Trustee on a business day (if not given on a business day, it shall be effective as of the next business day following the day the notice was given and this notice is herein referred to as the *"Termination Notice,"* such notice may be given by telecopy, e-mail, overnight delivery, express delivery or express mail):

    (a) this Order is reversed, vacated, stayed, amended, supplemented or otherwise modified in a manner which shall, in the sole opinion of the Collateral Agent, materially and adversely affect the rights of the Collateral Agent and/or the Secured Lenders hereunder or shall affect the priority of any material part of all of the Collateral Agent's and/or the Secured Lenders' claims, liens or security interests after two (2) business days notice by facsimile or e-mail to counsel for the Chapter 7 Trustee by the Collateral Agent; and

    (b) non-compliance or default by the Chapter 7 Trustee with any of the terms and provisions of this Order after two (2) business days notice by facsimile or e-mail to counsel for the Chapter 7 Trustee by the Collateral Agent.

11. Upon the occurrence of a Termination Event and the giving of the Termination Notice by the Collateral Agent to the Chapter 7 Trustee:

(a) the Chapter 7 Trustee shall immediately segregate all of the Collateral, including without limitation Cash Collateral, and shall not be permitted to use such Collateral absent the Collateral Agent's prior written consent; and

(b) the Collateral Agent shall have the right, free of the restrictions of § 362 of the Bankruptcy Code and without further application to this Court, to take immediate reasonable action to protect and preserve the Collateral, and, after five (5) business days' notice to Chapter 7 Trustee's counsel to exercise its rights and remedies pursuant to the Pre-Petition Agreements and/or applicable law as to all or such part of the Collateral as the Collateral Agent, in its sole discretion, shall elect.

12. To the extent in the possession, custody or control of the Chapter 7 Trustee, the Chapter 7 Trustee is directed to keep the companies' existing books and records of original entry, including without limitation, records of sale, credits authorized (whether or not credit memoranda have been issued), purchases, accounts receivable, bills of lading, cash receipts, and cash disbursements.

13. The Collateral Agent and its professional advisors shall have the right, at any time during normal business hours with reasonable prior notice to inspect, audit, examine, check, make copies of or extracts from the books, accounts, checks, orders, invoices, bills of lading, correspondence and other records of the Debtors, and the Chapter 7 Trustee shall make all of same available to the Collateral Agent and its representatives for such purposes to the extent such records are in the possession, custody or control of the Chapter 7 Trustee.

14. Consistent with the Final Order in the Chapter 11 Cases of the Debtors (1) Authorizing Maintenance of Existing Cash Management Systems, (2) Authorizing Continued Use of Certain Existing Bank Accounts, Deposit Practices and Business Forms, and (3) Authorizing Continuation of Intercompany Transactions (the *"Cash Management Order")*, any remaining pre-petition collection accounts in the name of the Debtors and the payment procedures under

which such accounts are maintained shall continue in full force and effect unless otherwise directed by the Collateral Agent.

15.     To the extent that all cash and checks of the Chapter 7 Trustee currently in her possession, bank accounts, lockbox accounts or otherwise, and the proceeds thereof, if any, are proceeds of the Secured Lenders' Collateral (including, but not limited to, any Secured Lenders' Collateral or proceeds thereof in the possession of any third party other than the Collateral Agent and the Secured Lenders), upon the effective date of the Interim Order, the Chapter 7 Trustee or relevant third parties shall deliver such proceeds to the Collateral Agent, and thereafter the Chapter 7 Trustee and any successor to the Chapter 7 Trustee or relevant third parties, including without limitation any successor trustee or trustees, and shall immediately deliver any and all payments or proceeds realized upon the sale, liquidation, collection or disposition of the Collateral, including without limitation the proceeds of sales authorized pursuant to Bankruptcy Code §363 or any plan of reorganization or liquidation which come into her possession to the Collateral Agent in the form received subject to the fees and expenses permitted to be paid pursuant to this Order and the Carve-Out authorized in the Final DIP Financing Order entered in the Chapter 11 Cases. The Collateral Agent shall make such Cash Collateral available to the Chapter 7 Trustee to the extent set forth in this Order. Any Cash Collateral not necessary to be used in accordance with this Order shall be retained by the Collateral Agent in a suspense account or distributed to the Secured Lenders in the sole discretion of the Collateral Agent (and the Chapter 7 Trustee has consented to such use as a permanent cash payment to the Secured Lenders on Pre-Petition Obligations). At the sole discretion of the Collateral Agent, the Collateral Agent can refuse to permit any expenditure of Cash Collateral that it deems is inconsistent with the terms of this Order. Any funds held in an account at the Collateral Agent for payment of taxes (to the extent taxes are not superior in right to payment from proceeds collected to Pre-Petition Obligations and the Adequate Protection Claim and the Chapter 7 Trustee has stated that such taxes

are not therefore due or payable) may be used by the Collateral Agent to pay Pre-Petition Obligations of the Secured Lenders in accordance with paragraph 16 hereof.

16. Subject to the other terms of this Order (including the Chapter 7 Trustee's use of Cash Collateral in accordance with the provisions as set forth above), the Collateral Agent is authorized, notwithstanding the provisions of the Bankruptcy Code §362, to retain and apply the proceeds of the Pre-Petition Collateral to all Pre-Petition Obligations and proceeds of Post-Petition Collateral attributable to the Replacement Lien to the extent of the Adequate Protection Claim due and owing to the Collateral Agent, the other Agents and Secured Lenders (which payment of proceeds the Collateral Agent may be first used to pay its reasonable fees and expenses including attorneys' fees and expenses and other professional advisor fees and expenses in accordance with this Order). It is hereby represented and consented to by the Chapter 7 Trustee and determined by this order of the Bankruptcy Court that the proceeds of Collateral shall be deemed to be applied as follows:

(a) first, to the payment of any outstanding costs and expenses incurred by the Collateral Agent in monitoring, verifying, protecting, preserving or enforcing its liens on the Collateral, including but not limited to the Collateral Agent's reasonable fees and expenses including attorneys fees and other professional advisors' fees and expenses;

(b) second, to the payment of the Pre-Petition Obligations in the order and pursuant to the terms set out in the Pre-Petition Agreements;

(c) third, to the Collateral Agent and the Secured Lenders pro rata in accord with the amounts of any other indebtedness, obligations or liabilities of the Debtors owing to them and secured by the Collateral unless and until all such indebtedness, obligations and liabilities have been fully paid and satisfied; and

(d) fourth, to the Debtor/Chapter 7 Trustee or to whomever the Collateral Agent reasonably determines to be lawfully entitled thereto or as directed by this Court,

*provided, further,* that such applications of the proceeds shall be free and clear of any claim, charge, assessment or other liability including, without limitation, any such claim or charge arising out of or based on, directly or indirectly, Bankruptcy Code §§ 105, 506(c) and 552(b).

17. The liens, mortgages and security interests granted by this Order shall be binding on the Debtors, their estates and their successors and assigns and the Chapter 7 Trustee and any successor trustees even if this Order is reversed or modified on appeal.

18. Notwithstanding Bankruptcy Rule 7062, the terms and conditions of this Order shall be: (a) immediately enforceable pursuant to Bankruptcy Rule 8005; and (b) not be stayed absent (1) an application by a party in interest for such stay in conformance with such Bankruptcy Rule 8005, and (2) a hearing upon notice to the Chapter 7 Trustee and the Collateral Agent.

19. The terms and provisions of this Order, as well as the liens, mortgages and security interests and the Adequate Protection Claim granted shall continue in this or any superseding case under the Bankruptcy Code and such liens, mortgages and security interests and the Adequate Protection Claim shall maintain their priority as provided by this Order until the Debtors' Pre-Petition Obligations are satisfied in full or the Adequate Protection Claim is satisfied in full.

20. Nothing contained in this Order or the Secured Lenders' consent to the use of the Cash Collateral shall constitute a determination that the Secured Lenders are not entitled to additional adequate protection for continued use of the Cash Collateral. This Order shall not constitute a concession by the Secured Lenders or a finding by the Court that the Secured Lenders' interests in Pre-Petition Collateral are *"adequately protected"* within the meaning of Sections 361 and 363 of the Bankruptcy Code.

21. So long as the Adequate Protection Claim has not been satisfied in full and unless the Collateral Agent shall have given its prior written consent, or this Court enters an order (upon proper notice to the Secured Lenders and the Collateral Agent and a hearing is held), which requires that all the Debtors' Obligations to the Collateral Agent and Secured Lenders on the Adequate Protection Claim be immediately satisfied in full, the Chapter 7 Trustee shall neither seek any further orders in the Debtors' Chapter 7 Cases, nor support any applications therefor, which authorize: (a) under Bankruptcy Code §363, the use of Cash Collateral in which the

Collateral Agent has an interest, or the sale, use or lease, other than in the ordinary course of business, of other property of the Chapter 7 Trustee in which the Collateral Agent has an interest (other than in this Order); (b) the obtaining of credit or the incurring of indebtedness pursuant to Bankruptcy Code §§364(c) or (d), or any other grant of rights against the Chapter 7 Trustee and/or the Debtors' estates, secured by a lien, mortgage or security interest in the Collateral held by the Collateral Agent or entitled to priority administrative status which is equal or superior to that granted to the Collateral Agent and the Secured Lenders (with respect to the Replacement Liens) herein; or (c) the return of goods by the Chapter 7 Trustee pursuant to Bankruptcy Code §546(c) without the written consent of the Collateral Agent.

22. Nothing in this Order shall be construed to limit the Secured Lenders' rights to apply to the Court at any time (with notice and an opportunity for hearing) for modification of this Order, for different or additional adequate protection, for termination of the use of Cash Collateral, for relief from the automatic stay, or any other relief provided that the Carve Out (as defined in the Final DIP Financing Order) shall not be subject to this provision. Nothing in this Order shall constitute or be construed as a consent, acknowledgment or agreement by the Secured Lenders to the Chapter 7 Trustee's calculation of the value of accounts receivable, inventory or *"Cash Collateral"* as used herein and nothing herein shall constitute a waiver or estoppel with respect to the right of the Collateral Agent or the Secured Lenders to dispute the validity or accuracy of such calculation or any contention with respect to collateral values or adequate protection based thereon.

23. Pursuant to, and to the extent of, the provisions of Bankruptcy Code §363(m), the rights, liens, mortgages and security interests granted by this Order shall be binding on the Debtors, their estates and their successors and assigns even if this Order is reversed or modified on appeal.

24. The Chapter 7 Trustee shall forthwith serve by overnight mail a copy of this Order upon the Secured Lenders, the United States Trustee, the Chapter 7 Trustee and the Debtors' twenty largest creditors as determined in accordance with Bankruptcy Rule 1007(d).

25. The provisions of this Order shall be binding upon and inure to the benefit of the Secured Lenders, the Collateral Agent, the Chapter 7 Trustee, the Debtors' estates and their respective successors and assigns (including any successor trustee appointed as a representative of any Debtor's estate or in any subsequent proceeding under the Bankruptcy Code).

SO ORDERED.

_____/s/ Jerry W. Venters
United States Bankruptcy Judge

Dated: February 18, 2004

Attorney for Debtor to Serve