# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MISSOURI

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| ATCHISON CASTING CORP., et al., | ) | Case No. 03-50965 |
| | ) | |
| Debtors. | ) | |

## MEMORANDUM ORDER

Ambiguity, like beauty, is often in the eye of the beholder.  Unlike beauty, however, ambiguity in a contract must be more than just in the eye of the beholder.

In the dispute presently before the Court, AmeriCast Technologies, Inc.,[1] the buyer of certain of the Chapter 11 Debtor's assets, perceives an ambiguity in the Asset Purchase Agreement entered into with the Debtor and on the basis of that alleged ambiguity seeks a $200,000 price reduction for costs incurred in renovating a manufacturing facility. The current holder of the buyer's promissory note, Harris N.A.,[2] sees no ambiguity in the contract and, therefore, argues that AmeriCast is not entitled to any reduction in the contract price.

The Court held a hearing on this matter on September 25, 2007, at which time AmeriCast and Harris presented oral arguments.  No evidence, other than the documents attached to Harris's motion, was offered because the Court indicated in the hearing notice that it would be a non-evidentiary hearing on the limited issue of whether the relevant provision in the contract was ambiguous, and that the Court would hold an evidentiary hearing only if it determined that the contract was ambiguous.

As it turns out, upon review of the documentary evidence (albeit limited), the Court has determined not only that the contract provision at issue is <u>un</u>ambiguous, but that under the unambiguous terms of the contract, AmeriCast is not entitled to withhold any funds from Harris under the present circumstances.  This memorandum order constitutes the Court's findings of fact

---

[1] AmeriCast Technologies, Inc. ("AmeriCast"), is the successor in interest to Blue Cast, Inc., the entity that actually purchased the assets from the Debtor in November 2003.  For simplicity sake, the Court will refer to the buyer only as AmeriCast.

[2] Harris N.A. ("Harris") is the successor by merger to Harris Trust and Savings Bank, the entity to which the Debtor transferred ownership of the promissory note.

and conclusions of law pursuant to Fed. R. Bankr. P. 9014.[3]

**BACKGROUND**

As noted above, the only evidence before the Court at this juncture is the six exhibits attached to Harris's motion for interpretation and enforcement of the APA. Based on those exhibits, the Court assembles the following skeleton of relevant facts:

Under the terms of the November 18, 2003 APA, AmeriCast agreed to purchase a number of assets from the Debtors' bankruptcy estate, including a storage facility called the "Rolling Mill Facility." However, on or about November 26, 2003, the parties executed an amendment to the APA carving out the Rolling Mill Facility from the deal. The amendment provided in pertinent part:

> We write to confirm our agreement as follows:
>
> 1. Pursuant to Buyer's right under the proviso in the definition of "Owned Real Property" in the Purchase Agreement, Buyer hereby exercises its right to remove the Rolling Mill Facility (as defined in paragraph 5 below) from the Disclosure Schedule, Section 5.11(a) for purposes of determining the Owned Real Property included in the Transferred Assets to be transferred and conveyed to Buyer at the Closing.
>
> \* \* \*
>
> 3. Section 10.1(a) of the Purchase Agreement [which lists indemnifiable expenses] is hereby amended to add the following subclause:
>
>> (vii) 50% of the actual costs of constructing a facility to duplicate the storage capacity and functions of the Rolling Mill Facility, up to an amount equal to US$200,000.

AmeriCast executed a $2,000,000 promissory note ("Note") payable to the Debtor as part of the consideration for the APA. Numbered paragraph 1 of the Note provides that principal payments are subject to adjustment under Section 10.2 of the APA. Section 10.2 references the expenses for which adjustment is permitted and the method for implementing those adjustments. Essentially, to adjust a principal payment, AmeriCast is required to send the current holder of the note (Harris) a "Reduction Notice," and Harris has ten days within which to appeal that reduction

---

[3] The Court has jurisdiction to resolve this dispute between these two non-debtor parties because the Asset Purchase Agreement ("APA") between the Debtors and the original buyer provides that the Court retains jurisdiction to interpret, implement, enforce, and resolve disputes related to or arising from the APA.

to the Bankruptcy Court.

On August 21, 2007, AmeriCast's Vice President and Chief Financial Officer, Kevin T. McDermed, sent such a Reduction Notice to Harris,[4] notifying Harris of AmeriCast's intent to reduce its final payment due under the Note on September 30, 2007, by $200,000 pursuant to APA Section 10.1(a)(vii). The following excerpt from the Reduction Notice is of particular importance to the resolution of this dispute:

> In lieu of constructing a new facility, the Company has negotiated with the Trustee for the Purchase of the Rolling Mill Facility, subject to Court approval....Further, the facility has continued to deteriorate. As a result, the roof and sidewalls need repaired or replaced [sic]. Due to these conditions, the Company is nearing having to vacate the facility.
> The estimated cost to return this facility to usable condition, without any significant improvements, such as cranes, flooring, etc., is as follows: [list of repairs totaling $709,000 omitted]
> The Company believes the clean-up and restoration of this facility is more practical and economical than constructing a new facility.

Harris responded to AmeriCast's Reduction Notice (without "conceding" that it was a proper Reduction Notice) in a letter dated August 23, 2007, which stated, *inter alia*, that AmeriCast was not entitled to the principal reduction it proposed because the plain language of APA Section 10.1(a)(vii) permits indemnification (accomplished by way of principal reduction) only for the "*actual* costs of *constructing* a facility to duplicate the storage capacity and functions of the Rolling Mill Facility," (emphasis added) and those costs do not include the "*estimated*" costs to "*clean-up* and *restore*" the facility. Harris's motion for the interpretation and enforcement of the APA ensued.

## DISCUSSION

The arguments in Harris's motion echo those contained in its August 23 response to AmeriCast's Reduction Notice, although the motion provides substantially more factual background

---

[4] Harris has been reluctant to admit that this letter was a proper Reduction Notice, but, as the Court stated at the hearing on Harris's motion, the Court will treat it as a Reduction Notice and treat Harris's motion as an appeal of that notice.

in support of Harris's position.[5]  Essentially, Harris maintains that AmeriCast is not entitled to a principal reduction for the "estimated" costs of "restoring" the Rolling Mill Facility because Section 10.1(a)(vii) refers only to the "actual" costs of "constructing" a facility and those terms unambiguously exclude the costs for which AmeriCast seeks indemnification.  The Court agrees.

First, contrary to AmeriCast's contention, the term "actual" as it is used in the APA does not include estimated costs or costs that have not been incurred.

AmeriCast's position relies on the APA's definition of "losses," which includes "contingent...unliquidated...inchoate...and unmatured" costs.  But "cost" is not similarly defined.  Moreover, the APA's use of the modifier "actual" indicates that "actual costs" do not include estimated costs or costs that have not been incurred.  Section 10.1(a)(**vi**) – the provision immediately preceding the one at issue here (Section 10.1(a)(vii)) – provides for the indemnification of "actual, **or**, after conducting emissions evaluations, reasonably projected out-of-pocket expenses incurred or to be incurred by Buyer to evaluate emissions...." (emphasis added)  The use of the conjunctive structure here is a strong indicator that "actual" expenses are different from "projected" (and, similarly, "estimated") expenses.  And since Section 10.1(a)(vii) provides only for "actual" expenses, it is appropriate to conclude that this section does not contemplate indemnification for costs or expenses that have only been estimated or have not yet been incurred.

Second, and more importantly, regardless of whether the costs are estimated or actual, the phrase "constructing a facility to duplicate the storage capacity and functions of the Rolling Mill Facility" in APA Section 10.1(a)(vii) is unambiguous and, under its plain meaning, cannot support a request for costs (actual or estimated) associated with "restoring" the Rolling Mill Facility.

"A mere disagreement between the parties as to the meaning of a disputed contractual provision is not enough to support a claim that the contractual language is ambiguous, as any ambiguity in a contract must emanate from the language used in the contract rather than from one

---

[5] The Court does not consider Harris's additional factual arguments here because: (1) the Court finds the APA to be unambiguous, so extrinsic evidence of the parties' intent is excluded from consideration, *see Clearly Canadian Beverage Corp. v. American Winery, Inc.*, 257 F.3d 880. 888-89 n.2 (8th Cir. 2001) (citing *Eisenberg v. Redd*, 38 S.W.3d 409, 411 (Mo.2001); and (2) there are no facts (other than the documents) before the Court – only argument.

party's subjective perception of its terms."[6] AmeriCast, however, has not identified any ambiguity in the APA's language; rather, AmeriCast complains only of the subjective impracticality of that provision on its particular situation. These complaints are insufficient to create an ambiguity warranting the introduction of extrinsic evidence to clarify the parties' intent.[7] In the absence of any ambiguity, the Court confines its interpretation of the APA to its plain terms. And those terms cannot be harmonized with the interpretation proposed by AmeriCast.

Aside from the obvious difference in the dictionary definition of these terms – "construct" means "to build," and "restore" means "to bring back to or put back into a former or original state"[8]– the most persuasive examples of how these terms differ come from AmeriCast's own Reduction Notice, which emphasizes the difference between the two. The fourth paragraph begins, "In lieu of constructing a new facility..." The following paragraph discusses the "cost to *return this facility* to usable condition, without any significant improvements..." And, the penultimate paragraph states, in frank terms, "The Company believes the clean-up and restoration of this facility is more practical and economical than constructing a new facility." AmeriCast plainly recognizes the difference between the construction and restoration of a building, and, unfortunately, must accept the impact that difference has on its indemnification rights under the APA.

In short, AmeriCast elected to purchase, clean up and restore the existing Rolling Mill Facility. It chose not to construct a duplicate facility. The language of the APA, and the course of action taken by AmeriCast, leave no room for ambiguity.

## CONCLUSION

For the reasons set forth above, the Court finds that the APA is unambiguous, and that under its terms, AmeriCast is not entitled to set off $200,000 from its last payment due under the Note. Therefore, it is

**ORDERED** that the $200,000 AmeriCast deposited into the registry of the Court pending the resolution of this dispute shall be disbursed to Harris, with all interest accrued from the date the

---

[6] 17A Am. Jur. 2d *Contracts* § 331 (2007).

[7] *See Clearly Canadian Beverage Corp. v. American Winery, Inc.*, 257 F.3d at 888-89 n.2.

[8] *See* www.merriamwebster.com.

funds were deposited into the registry.

      **SO ORDERED** this 29th day of October, 2007.

                                                /s/   Jerry W. Venters
                                            United States Bankruptcy Judge

A copy of the foregoing mailed electronically or
conventionally to:
Paul M. Hoffman
Richard M. Beheler